David P. Beitchman (SBN 198953)
dbeitchman@bzlegal.com
Andre Boniadi (SBN 266412)
aboniadi@bzlegal.com
**BEITCHMAN & ZEKIAN, P.C.**
16130 Ventura Blvd., Suite 570
Encino, CA 91436
Telephone: (818) 986-9100
Facsimile:   (818) 986-9119

Milord A. Keshishian, (SBN 197835)
milord@milordlaw.com
MILORD & ASSOCIATES, P.C.
10517 West Pico Boulevard
Los Angeles, California 90064
Tel: (310) 226-7878
Fax: (310) 226-7879

*Attorneys for Plaintiff,*
CAP EXPORT, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAP EXPORT, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> ZINUS, INC., a California corporation; COLIN LAWRIE, an individual; ZINUS, INC. KOREA, a Korean corporation; ZINUS CANADA, INC., a Canadian corporation; KEITH REYNOLDS, an individual; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO. 2:21-cv-07148-JWH-MRWx <br><br> **FIRST AMENDED AND SUPPLEMENTAL COMPLAINT** <br> 1. **False Advertising, Unfair Competition, Trade Libel, Product Disparagement Per 15 U.S.C. §1125(a);** <br> 2. **False Advertising, B.P.C. § 17500** <br> 3. **Tortious Interference with Existing and Prospective Economic Advantage;** <br> 4. **California Trade Libel/Product Disparagement;** <br> 5. **Statutory Unfair Competition B.P.C. § 17200;** |

Plaintiff CAP EXPORT, LLC ("Cap Export") complains of the defendants and alleges as follows:

### INTRODUCTION

1. This is an action to stop Defendants' concerted efforts to defraud the USPTO, the courts, and end-consumers harmed by artificially inflated prices secured through Defendants' illicit cease and desist letters to competitors and enforcement of sham patent lawsuits to prevent lawful competition, including *Cap Export, LLC, v. Zinus, Inc.*, 2:16-cv-00371 (C.D. Cal. 2106), and to maintain what is estimated to be a $100,000,000 plus patent fraud scheme. Egregiously, Defendant Colin Lawrie ("Lawrie") serving not only as Zinus, Inc.'s president but also its expert witness, averred under the penalty of perjury that he had never seen a bed with all the components fitting inside the headboard. The statement was irrefutably false because Lawrie had purchased over 1200 units of Woody Furniture Manufacturer Sdn Bhd's ("Woody") public domain bed-in-a-box for at least three years before the application filing date resulting in the fraudulently obtained U.S. Patent 8,931,123 ("the `123 Patent"). Lawrie and his codefendants embarked on a scheme to fraudulently patent Woody's public domain product to the detriment of fair competition.

2. In November of 2019, Lawrie was ordered to testify again regarding his prior false testimony, but – true to form – he testified falsely again. Lawrie testified that he was not involved with purchases of the bed from Woody, the patent process, and did not know how Suk Kan Oh – the fraudulently named inventor on the `123 Patent – obtained samples of Woody's prior art bed before the patent application filing date. Later produced documents, that had been illicitly hidden by Zinus, proved that in fact Lawrie instructed Woody to send the public domain bed to the fraudulently named inventor for copying in China, met with Woody in Las Vegas in 2013 to negotiate an agreement whereby Zinus would illicitly file a patent application on Woody's public domain bed in exchange for an exclusive supply

1

agreement, and met with patent counsel to discuss the application that later became the `123 Patent. Moreover, the "fraudulent inventor" Oh, who merely copied Woody's public domain bed, met Woody in June of 2013 and then filed the patent application three-months later. Oh falsely declared to the USPTO that he alone "invented" the same bed-in-a-box Woody had been selling to Lawrie for years, and concealing his knowledge of Woody's bed from prior meetings and agreement with Woody.

3.    To further the fraud on the Court in the prior litigation, Oh farcically submitted a declaration – under the penalty of perjury – claiming he was not aware of Woody's bed-in-a-box before filing the patent application, but produced zero technical drawings or evidence establishing his invention of the bed-in-a-box. He also submitted a false declaration that he was not sent Woody's bed-in-a-box by a laundry list of companies, but conveniently omitted Woody itself. A later produced email established that Lawrie had ordered Woody to send the bed-in-a-box directly to Zinus's office in China where Oh was employed. Thereby, Oh, Lawrie, Zinus employees Brad Song, and Cindy Hunting, and Zinus's founder and Chairman, Younjae Lee (aka T.P. Lee), engaged in inequitable conduct by not listing Woody's prior art bed on any Information Disclosure Statement to the USPTO. Oh further engaged in inequitable conduct by signing a false declaration that he was the inventor of the claims in the application that would issue as the `123 Patent.

4.    After securing an unlawfully obtained judgment of infringement based on the fraudulently obtained `123 Patent, Defendants willfully and intentionally embarked on an astonishing false advertising campaign to disparage Cap Export and its products by disseminating literally false and misleading statements in bad faith to online retail platforms and to consumers accusing Cap Export of unlawful activity by infringing the `123 Patent that Defendants knew was invalid, unenforceable, and not infringed. As a result of Defendants' scheme, Cap Export lost millions of dollars in sales to existing customers, resulting in damage to families of employees

that were laid off as a result of Defendants' misconduct and fraud. All the while, Defendants made millions of dollars by competing unfairly through sham patent lawsuits to squash fair competition. Through their advertising, Defendants falsely asserted that they were the exclusive source of any "bed frame which can be assembled from components that all fit within a compartment fashioned from the bed's headboard," and asserted in bad faith that Cap Export could not lawfully supply a competing product because Cap Export's competing beds infringed. Defendants' statements were literally false because Cap Export could freely import and sell not only its own bed-in-a-box product but also Woody's bed-in-a-box products that predated Zinus's patent application date by at least three years.

5. Defendants' conduct was knowing, willful, intentional, and in bad faith and insurance coverage should be barred under Insurance Code Section 533, including based on the findings of Zinus's and Lawrie's fraud by the Court of Appeals for the Federal Circuit. See *Cap Exp., LLC v. Zinus, Inc.*, 996 F.3d 1332, 1334 (Fed. Cir. 2021). Defendants did not issue a retraction of the false statements, even after the illicit judgment was set aside on the Court's granting of CAP's Rule 60 Motion.

## **THE PARTIES**

6. Plaintiff Cap Export is a limited liability company existing under the laws of California with its principal place of in Vernon, California.

7. Defendant, Zinus, Inc. is a California corporation with its principal place of business at San Leandro, California.

8. Defendant Colin Lawrie is a resident of Toronto, Canada but was the President of Zinus in California until April of 2019, when he became the vice chairman of co-defendant Zinus Korea. At all relevant times, Lawrie was the active driving force behind the improper conduct of the Zinus entities, including filing false declarations, testifying falsely under the penalty of perjury, and making false statements of fact relating to Cap Export and its products in this District.

9.      Zinus, Inc. Korea ("Zinus Korea") is a Korean corporation with its principal place of business at Sungnam City, Korea.  Zinus Korea owns, operates and or controls Zinus Canada and Zinus, and is the driving force behind the subsidiaries' conduct.

10.      Zinus Canada, Inc. ("Zinus Canada") is a Canadian corporation with its principal place of business in Ontario, Canada.

11.      Keith Reynolds is a resident of Los Angeles, California and has been the president of Zinus since April of 2019.  At all relevant times, Reynolds was the active driving force behind the improper conduct of Zinus, including making false statements of fact relating to Cap Export and its products.

12.      Defendants DOES 1 through 10, inclusive, are other parties not yet identified who have contributed to or have engaged in one or more of the wrongful acts alleged herein.  The true names, whether corporate, individual, or otherwise of DOES 1 through 10, inclusive, are presently unknown to Cap Export, and therefore, are being sued by such fictitious names, and Cap Export will seek leave to amend this Complaint to include their true names and capacities when the same have been ascertained.

13.      Cap Export is informed and believes, and on that basis alleges, that at all times relevant to this action, each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment, and actively participated in, controlled, subsequently ratified and adopted each and all of the acts or conduct alleged herein with full knowledge of each and every violation of Cap Export's rights and the damages to Cap Export proximately caused thereby.

## **JURISDICTION**

14.      These causes of action arise under the provisions of the Lanham Act (15 U.S.C. §§1051-1127), the law of the State of California, and the common law.

This Court has subject matter jurisdiction over the federal causes of action pursuant to 28 U.S.C. §§1331 and 1338.  This Court has subject matter jurisdiction over the state causes of action under 28 U.S.C. §1367(a) because these claims are so related to claims within the original jurisdiction of this Court under the Lanham Act of the United States that they form part of the same case or controversy.

15.    This Court has personal jurisdiction over Defendants Zinus and Reynolds because they reside in or conduct business in this district and over Lawrie, Zinus Korea, and Zinus Canada because they purposefully directed their unlawful conduct to this district, have substantial business conducted in this district, and participated in a sham patent lawsuit in bad faith in this district against residents of this district, and published false advertising and misleading statements in this district or affecting residents of this district.

16.    Venue in this judicial district is proper under 28 U.S.C. §1391(b)-(c) and 15 U.S.C. §§ 15, 22 because Zinus, Inc. and Reynolds reside in this district and a substantial part of the events or omissions giving rise to these claims occurred in this district.

## FACTUAL BACKGROUND

17.    Zinus claims to be the owner of the `123 Patent.

18.    The `123 Patent falsely identifies Suk Kan Oh as the sole inventor.

19.    The `123 Patent was fraudulently obtained because the subject matter of the invention was not invented by Oh, but was copied from a bed that Lawrie had purchased over 1200 units of, on three-separate occasions, from Woody located in Malaysia.  In fact, his signature appears on at least one February 23, 2012 invoice from Woody for the public domain bed that Zinus fraudulently patented in September of 2013.  Attached as **Exhibit A** is a true and correct copy of the invoice.

20.    On February 24, 2013, the last order of the public domain Woody beds, which are irrefutably invalidating prior art to the `123 patent, were slated to ship to Lawrie.  Less than four months later, Oh admits under the penalty of perjury to

meeting Woody's representative for the first time in June of 2013 in his office at Zinus China.  The meeting occurred after Lawrie had personally arranged in May of 2013 for Woody to delivery samples of the public domain bed-in-a-box to Zinus's Xiamen, China location where Oh worked.

21.    On May 27, 2013, Lawrie emailed Zinus Xiamen, where Oh was employed, informing them that Woody's sample beds would be delivered to Zinus, Inc. Xiamen ("Zinus Xiamen").  Also copied on the email is Zinus Canad's manager Peng Defranco, who submitted further false declarations in Zinus's sham patent lawsuit against Cap Export, continuing the fraud on the Court by declaring that she too was unaware of Woody's public domain bed-in-a-box.

22.    In a June 2013 group email chain that included Lawrie, Song, Oh, and Lee, among numerous others, a PowerPoint attachment included pictures of Woody's bed in a box with writing that the parts fit within the headboard, which image is produced below:



23.    On August 8, 2013, Woody's representative sent an email to Defranco confirming the substance of the meeting with Lawrie in Las Vegas regarding

Woody's "bed in 1 box," wherein Colin stated that Woody's "headboard is good to go" and orders would be placed, but Woody would be forced to deal with Zinus on an exclusive basis because of Zinus's "patent right." Thus, even without a patent application filed, let alone issued, Lawrie was threatening Woody with patent infringement over Woody's own public domain product.

24.    In August of 2013, Oh signed a "cooperation agreement" with Woody to have the same bed-in-a-box, which Lawrie had been purchasing for at least the prior three-years, now built for Zinus Xiamen. The "cooperation agreement" proudly admits that Oh had a liquidated damages clause in the amount of three million RMB for breach of confidentiality, which, on information and belief, was intended to silence Woody from exposing Lawrie's, Zinus's and Oh's fraud in claiming Woody's public domain bed-in-a-box in the subsequently filed patent application that issued as the `123 Patent.

25.    Approximately three months after Oh met Woody and a month after executing the cooperation agreement, Zinus filed a patent application on September 13, 2013 for Woody's bed-in-a-box public domain product, fraudulently naming Oh as the inventor, which application issued as the `123 Patent. Darrien Wallace, the prosecuting attorney of the application resulting in the `123 Patent, testified that he met in person with Lawrie, Lee, and Song numerous times between July and September of 2013 to discuss the filing of the application that would issue as the `123 Patent and no one disclosed Woody's prior art bed-in-a-box to the USPTO. Oh also engaged in inequitable conduct by falsely declaring himself the sole inventor of the claims in the `123 Patent.

26.    Lee, Oh and Zinus's patent counsel failed to even file an Information Disclosure Statement with the USPTO during the prosecution of the patent application, let alone list the Woody bed-in-a-box as prior art, or conduct a prior art search; whereby the defrauded patent examiner passed application to issuance, which resulted in the `123 Patent.

27.     With the fraudulently procured `123 Patent, on or about December 18, 2015, Zinus, through its counsel, sent a cease and desist letter – in bad faith – claimed to be the owner of the `123 Patent and accused Cap Export's advertisement, distribution, and sales of its bed-in-a-box products (the "Accused Products") of falling within the scope of the `123 Patent, and constituted infringement.

28.     Defendants' counsel sent the cease and desist letter to Cap Export's customer 4Moda Corp. and copied Amazon.com alleging infringement of the `123 Patent, which caused Amazon to shut down 4Moda's Amazon page and lost sales of Cap Export's bed-in-a-box product.  The cease and desist letter was sent in bad faith because Defendants were fully aware that the `123 Patent was invalid, unenforceable, and not infringed.

29.     Cap Export is the manufacturer and importer of the Accused Products.

30.     Cap Export provides and sells the Accused Products to and through the same entities as Defendants, thereby rendering the parties direct competitors.

31.     Zinus in bad faith asserted and maintained – even after Woody's irrefutably invalidating prior art documents came to light in the underlying litigation – a sham patent lawsuit against Cap Export, including a third-party complaint against Cap Export's president Abraham Amouyal, and its customers for purported infringement of the `123 Patent.  The sham litigation claimed infringement as a result of Cap Export's manufacturing, importing, and/or selling the Accused Products, despite irrefutable evidence that the `123 Patent and all of its claims are invalid because Zinus and Oh merely copied the Woody public domain bed that Lawrie had been purchasing for at least three years prior to the application filing date, which Lawrie had Woody ship to Oh's Zinus Xiamen location, and with whom Oh met in June of 2013 – three months before the application filing date.

32.     Lawrie served not only as Zinus's president, but also as its patent expert in the previous case where he made numerous misrepresentations – both in declarations and deposition testimony – regarding his knowledge of a bed that ships

8

in one box and all components fit within a compartment in the headboard.  Indeed, in ruling on Cap Export's motion to set aside the illicitly procured judgment, the "Court conclude[d] that Lawrie's deposition testimony on Oct. 11, 2016 misrepresented his prior experience and knowledge of bed frames that were shipped disassembled in a single box . . ."  In addition, "[t]he Court conclude[d] that [Lawrie's] repeated answer of 'No' constituted an affirmative misrepresentation, in light of the substantial evidence that he had otherwise made multiple purchases of beds that were shipped disassembled in one box, and his acknowledgment that his deposition testimony was 'literally incorrect.'"

33.    Lawrie knew that the claims of the `123 Patent were invalid and unenforceable because Zinus merely copied the elements of Woody's public domain bed-in-a-box, as affirmed by the Court: "Lawrie also acknowledged, when presented with pictures of the Woody beds taken in 2010, that those pictures showed bed frames where all the component pieces fit into the headboard."

34.    Lawrie and Defranco, Zinus Canada's Director and former Jusama employee, communicated with Woody and the email evidence shows that they were fully aware that Woody's bed-in-a-box stored all of the components of the bed frame inside the headboard.  The Court found that in the emails "Peng Defranco distinguishes between opening shipment 'boxes' to access additional instruction manuals (which presumably would never be packed inside a headboard, and be shipped loose in the box) and opening up the 'beds' to retrieve missing parts. [ ] This terminology is consistent with packaging of all components in the headboard, which would require opening the 'bed' itself to access additional bed frame pieces."

35.    Lawrie's 2016 deposition testimony was determined to be less than credible and the Court found "it highly improbable that Lawrie was completely unaware of Zinus' patent activities given his role as president, or that at the time of his 2016 deposition he had completely forgotten about the three separate purchases made by Jusama from Woody several years beforehand."  Said purchases combined

9

totaled more than 1200 units of Woody's public domain bed-in-a-box.  Indeed, later produced documents that Lawrie and Zinus had been hiding proved his testimony regarding his lack of knowledge of Zinus's scheme to illicitly patent the bed were unequivocally false, because he was intimately involved in the scheme.

36.     Lawrie intentionally withheld and concealed evidence of the Woody public domain bed-in-a-box, which was prior art that would invalidate all the claims of the `123 patent, wherein the Court concluded "Lawrie then repeatedly misrepresented his knowledge of such bed designs, in light of the multiple purchases by Jusama of bed frames matching the claims in the `123 patent, all purchased prior to the filing of the patent."  Indeed, the Court found that Lawrie was not honest regarding his knowledge of the prior art "given the evidence in the record regarding Lawrie's misrepresentations on this topic."

37.     Through concealment of evidence and fraud on the USPTO and the courts, including Oh's false inventorship declaration which renders the `123 Patent unenforceable, Defendants used sham patent litigation with an invalid and unenforceable patent as a weapon against its direct competitor, Cap Export, in bad faith with the specific intent to chill competition and increase Zinus's illicitly obtained revenues.

38.     Concealing Woody's public domain prior art bed from the Court during the 2019 summary judgment proceedings, the Court was misled into finding the `123 Patent was valid and Cap Export's Accused Products infringed claims 1 through 3 of the `123 Patent.

39.     Based on the Court's ruling, which was obtained through Defendants' misrepresentations, on May 30, 2019, Cap Export was forced to enter into a $1.1 million consent judgment of infringement in the sham patent lawsuit.

40.     After making $330,000 in payments under the illicitly obtained stipulated judgment of infringement, Cap Export learned of documents submitted on June 22, 2019 in the *Zinus, Inc. v. Classic Brands, LLC* (Case No. 2:19-cv-05455)

10

(C.D. Cal. 2019) litigation that included a letter and accompanying documentation and photographs establishing that as "as early as 2010, a company called Xiamen XinShunYang Industry and Trade Company ('XXITC'), located in Xiamen, China was manufacturing, promoting and selling a bed-in-a-box frame that includes all of the disclosed elements taught by the `123 and `382 Patents." The `382 Patent refers to U.S. Patent No. 9,474,382, which issued as a continuation application of the `123 Patent that Zinus filed without disclosing the Woody prior art. In fact, Zinus has filed numerous continuation application without ever disclosing the Woody prior art or Agnes Tan's declarations and supporting evidence, including a continuation application filed on June 27, 2022.

41.     Defendants failed to meet their obligations to conduct a reasonable pre-suit investigation under Federal Rule of Civil Procedure Rule 11 and refused to investigate that the `123 Patent was rendered obvious by the XXITC beds and also the accompanying Woody beds in the Classic Brands' submissions. Instead, Defendants continued to assert sham patent infringement claims against Classic Brands in bad faith and refused to set aside the illicitly obtained stipulated judgment against Cap Export. In fact, to further defraud the Court, Defendants did not conduct a search of their servers for responsive documents in response to the Court's ordered briefing for evidence of Defendants' knowledge of the Woody public domain beds. Defendants intentionally did not conduct a search of their servers until all Rule 60 depositions and briefing were complete to suppress evidence of their bad faith assertion of the invalid and unenforceable `123 Patent.

42.     In defending against the sham patent lawsuit, Cap Export traveled to Malaysia to further investigate sales by Woody and discovered that Lawrie had been purchasing the public domain prior art Woody beds for at least three-years prior to the filing of the application that resulted in the `123 Patent, one of three Lawrie purchases is shown in **Exhibit A** bearing Lawrie's signature.

43.     Despite this unequivocal evidence of Defendants' misconduct and

1   invalidity and unenforceability of the `123 Patent, Defendants continued to file

2   misleading documents with the Court and file continuation patent applications,

3   while still refusing to disclose the Woody prior art to the USPTO.

4        44.    Despite this unequivocal evidence of Defendants' misconduct and

5   invalidity and unenforceability of the `123 Patent, Defendants maintained two

6   separate sham patent lawsuits in bad faith against Cap Export and Classic Brands

7   when no reasonable litigant could have expected that either of them could succeed

8   on the merits.  The purpose of maintaining the lawsuits was solely its *in terrorem*

9   effect, i.e., to interfere with Cap Export's business and its relationships with its e-

10  commerce partners and customers.

11       45.    To further that illegal interference with Cap Export's business and

12  customers, and despite being served on June 22, 2019 with XXITC's and Woody's

13  documents establishing the invalidity of the `123 Patent, on or about July 23, 2019,

14  Zinus published on at least its website and issued a press release falsel advertising

15  the judgment it illicitly procured against Cap Export.  Attached as **Exhibit B** is a

16  copy of Zinus's website with the false and misleading advertising located at the

17  following URL: https://www.zinus.com/pages/zinus-wins-bed-frame-patent-ruling-

18  jul-2019.  Zinus maintained the advertisement on its website even after the district

19  court's order vacating the illicitly obtained judgment.  To date, Defendants have

20  failed to publish a retraction of the false advertising, despite previously hiring a

21  public relations firm to spread the false information.

22       46.    The website advertisement, distributed in interstate commerce, contains

23  numerous literally false and misleading statements asserting that Zinus is the

24  exclusive source of the bed-in-a-box product, that no non-infringing alternatives are

25  available from Cap Export, and that Cap Export was acting unlawfully and

26  infringing, including:

27          a.   "we are pleased to announce that Zinus has won a $1.1 million

28             judgment against Cap Export, LLC and other parties, who attempted

1    to use and profit from what we created."

2    b. "Specifically, we successfully enforced our patent for breakthrough

3    technology – a bed frame which can be assembled from components

4    that all fit within a compartment fashioned from the bed's

5    headboard."

6    c. "All pieces can ship in a single box, which is unique in design and

7    consumer convenience.  In short, this is a tremendous innovation we

8    are very proud of, which is why we went to such lengths to protect

9    it."

10    d. "We felt it important that our customers, including our retail and e-

11    commerce partners, be made aware of this news and our wavering

12    commitment to putting customers first."

13    e. "We respect the importance of competition in advancing any

14    market, but that competition also needs to be lawful.  We could not

15    and will not allow such deliberate copying of our innovations,

16    which could mislead those who depend on the exceptional quality of

17    Zinus product offerings."

18    f. "Enforcing our innovations also inspires long-term customer

19    confidence and gives them a sense of comfort knowing that the

20    physical and virtual shelf space they give to our products is not at

21    risk."

22    g. "All of our products are designed and manufactured to put the

23    consumer first.  That means superior quality supported by more than

24    60 patents and 200 trademarks"

25    h. "We are proud of our innovations and will continue to make bed-in-

26    a-box mattresses and easy to assemble furniture that creates

27    harmony in the home at fair prices and value to consumers.  We will

28    continue to stand up for what is right and will fiercely enforce our

13

1               more than 260 patents and trademarks and protect our innovations

2               against those who attempt to copy us."

3       47.     The false and misleading advertising on Zinus's website and the

4 internet is signed by "Colin Lawrie, Vice Chairman, Zinus," which is Zinus Korea,

5 and "Keith Reynolds, President, Zinus, U.S." Colin Lawrie was the Director of

6 Zinus Korea at the time he signed the press release.

7       48.     As admitted on Zinus's false advertising on its website, Defendants

8 distributed the false and misleading comments to Cap Export's e-commerce

9 partners, including Amazon.com, Walmart.com, and Wayfair.com, resulting in

10 plummeting of Cap Export's product rankings, including products unrelated to the

11 litigation. Zinus's website explicitly states: "We felt it important that our customers,

12 including our retail and e-commerce partners, be made aware of this news…"

13      49.     Zinus's unrelenting dissemination regarding the illicitly procured

14 stipulated judgment included a Google Ads campaign, wherein consumers searching

15 for beds were provided with Zinus's false advertisements proclaiming "Zinus wins a

16 $1.1 million judgment against Cap Export, LLC, and other parties." Attached as

17 **Exhibit C** is a true and correct screenshot of Zinus's Google Ads publication.

18      50.     These false and misleading Google Ads advertisements regarding the

19 illicitly procured judgment in the sham patent lawsuit were published and

20 distributed after Zinus had received the XXITC and Woody prior art documents in

21 the Classic Brands case. But Defendants were also fully aware that the `123 Patent

22 was invalid and unenforceable because Lawrie had purchased the Woody bed at

23 least three years before the patent application was filed and Oh had reviewed

24 Woody's public domain bed-in-a-box and met with Woody about making the same

25 bed at least three months before the application was filed.

26      51.     Defendants also published a press release on July 23, 2019, on

27 businessinsider.com in bad faith that falsely and misleadingly asserted that Cap

28 Export was an infringer, communicated that Zinus was the exclusive source of the

bed-in-a-box products, and claimed victory in the sham patent lawsuit: Zinus "announced today that it has won a $1.1 million judgment against Cap Export, LLC and other parties regarding the infringement of its bed frame patent (U.S. Patent No. 8,931,123)."  The published advertisement also contains other false and misleading statements communicating that Zinus is the exclusive source of the bed-in-a-box product, that no non-infringing alternatives are available from Cap Export, and that Cap Export was acting unlawfully, including:

    a.  "Zinus, a proud innovator of bed-in-a-box mattresses and a wide range of easy to assemble furniture, announced today that it has won a $1.1 million judgment against Cap Export, LLC and other parties regarding the infringement of its bed frame patent (U.S. Patent No. 8,931,123)."

    b.  "'we had to pursue legal action to enforce patents for the breakthrough technology we developed,' said Colin Lawrie, Vice Chairman at Zinus."

    c.  "'We took this action, over three-and-a-half years of litigation, as part of our commitment to doing right by our customers, including our retail and e-commerce partners,' said Keith Reynold, President at Zinus U.S.  'Protecting our innovations inspires long-term confidence and gives our customers a sense of comfort knowing that the virtual or physical shelf space they give to our products is not at risk.  We could not and will not allow such deliberate copying of Zinus' innovations, which could mislead those who depend on Zinus' exceptional product quality."

    d.  "The U.S. District Court for the Central District of California's judgment in favor of Zinus . . . prohibits Cap Export, LLC and other parties from further infringement."

52.    In addition to disseminating false press releases after it was in

15

possession of the XXITC documents, on or about August 23, 2019 Zinus caused to be published an article in The Bell News, a Korean financial news publication, claiming that it had "won" the U.S. Patent lawsuit.

53.     Defendants were fully aware that Defendants were not the exclusive source for the bed-in-a-box because Oh and Zinus did not develop the bed-in-a-box technology, which bed Lawrie had been purchasing from Woody at least three-years prior to filing the patent application that would result in the `123 Patent.  Reynolds knew or should have known that Cap Export could not infringe an invalid and unenforceable patent and did not copy "Zinus' innovations."  Reynolds knew or should have known that Zinus was not the exclusive source of the bed-in-a-box product because Cap Export could lawfully import and sell Woody's Fusion and Mersin bed-in-a-box products, just like Lawrie had done three years prior to the application filing that issued as the `123 Patent.

54.     Despite being warned of the false advertisement after the Court's order vacating the illicitly obtained judgment, Defendants continued to advertise the false and misleading statements on at least the Zinus website and businessinsider.com.  In fact, as of the filing of this action, Defendants' false advertisement continues to be prominently displayed on businessinsider.com.  A true and correct copy of Defendants' false advertisement on businessinsider.com is attached hereto as **Exhibit D**.  Indeed, Defendants engaged a public relations firm, Weber Shandwick, to disseminate their commercial speech in bad faith.

55.     Defendants, fully aware of all the evidence on their servers establishing the invalidity of the asserted claims and unenforceability of the `123 Patent in the underlying sham patent lawsuit, embarked on a scorched earth litigation strategy to multiply Cap Export's expenses, including after the district court vacated the illicitly procured stipulated judgment.  Defendants' misconduct is magnified in view of their immediate dismissal of the Classic Brands case for zero dollars after the district court's order vacating the illicitly obtained judgment against Cap Export and its

1  president.

2  56.   Zinus then dumped Lawrie as its patent expert – the person most

3  familiar with Woody's bed-in-a-box – to shelter him from further depositions

4  because he is outside the Court's subpoena power.  Zinus instead introduced Cindy

5  Hunting to fabricate an argument that a picture of Woody's bed-in-a-box did not

6  disclose a connector in the footboard.  The District Court granted Cap Export's

7  motion for summary judgment of invalidity of claims 1-3 of the `123 Patent, but the

8  Fed. Cir. reversed with skepticism of Hunting's assertion and merely sought on

9  remand evidence that "the Fusion bed and the Mersin bed are in fact on and the

10  same with respect to the features claimed in the `123 Patent."  To avoid that

11  inevitable finding that the Fusion bed and Mersin beds are the same, which Cap

12  Export then quickly demonstrated through a sworn declaration obtained from

13  Woody's representative Agnes Tan, the Zinus entities immediately issued a

14  worldwide covenant-not-to-sue Cap Export for sale of the Accused Products.  A true

15  and correct copy of Ms. Tan's declaration is attached hereto as **Exhibit E**.

16  57.   As a result of the frivolous sham patent lawsuit and false advertising

17  campaign, Zinus succeeded in intimidating Cap Export's customers and e-commerce

18  partners and outlets into not advertising, promoting, and purchasing Cap Export's

19  products that were unrelated to the Accused Products.  On information and belief,

20  the false statements to Cap Export's business partners caused said business partners

21  to not display or lower the display rankings of Cap Export's other unrelated

22  products, including on Amazon.com.

    a.  Defendants committed common law fraud on the USPTO to obtain the
`123 Patent and to assert the invalid and unenforceable patent in bad
faith to secure or maintain an illicit monopoly.

    b.  In violation of 37 C.F.R. § 1.63, Oh falsely declared that he was the
"original inventor or an original joint inventor of a claimed invention in
the application" that issued as the `123 Patent.

17

c.  Oh was fully aware that the invention claimed in the `123 Patent was actually a public domain product he obtained from Woody, which Lawrie had been purchasing and selling publicly for three years prior to the application filing date, and that his claim of inventorship was false.

d.  Oh's knowledge is imputable to all Defendants because they were fully aware that Woody, through Lawrie's instructions and introduction, had supplied Oh with the bed-in-the-box product that Oh copied.

e.  Nevertheless, Defendants falsely asserted that Oh was the inventor of the `123 Patent to obtain assignment of thereof in order to have standing to enforce the same.

f.  Oh, Song, Lawrie, and Lee all knew they had a duty to disclose the Woody prior art during the prosecution of the application that because the `123 Patent, including in numerous meetings with their prosecuting patent attorney, Darrien Wallace.

g.  Defendants failed to disclose the Woody prior art to the USPTO because they knew or should have known that the Examiner would have rejected the claims of the `123 Patent because they were either anticipated by or rendered obvious by the Woody prior art.

h.  Defendants and Cap Export are competitors in the market, including both parties offering for sale bed-in-a-box products.

i.  In its First Amended and Supplemental Third-Party Complaint ("FASTPC") filed on March 12, 2019, Zinus admitted in ¶ 31 that it "has made more than $100 million in gross revenue selling beds using the technology of the `123 patent."  Since the creation of the illicit monopoly, Zinus's total sales of the beds using the technology of the `123 Patent has increased and the company had almost $1 billion in revenue in 2021.

j.  Zinus has alleged that Cap Export is a small company that is

18

undercapitalized and has "significantly more liabilities than assets." FASTPC ¶ 86.

k.  Zinus's enforcement efforts, including sending cease-and-desist letters to Cap Export's customers such as Amazon, Walmart, and Wayfair, alleging infringement of the `123 Patent and publishing advertising in Exhibits B-D, are designed to unlawfully deter Cap Export from selling the public domain bed-in-a-box.

l.  Defendants' conduct is an attempt to monopolize the market and is predatory and unlawful.

m.  Defendants have knowingly asserted and maintained ownership rights in the `123 Patent through litigation which they know are invalid and unenforceable for purposes of limiting or eliminating a competitor to expand the percentage share of the market.

n.  Defendants' anticompetitive conduct successfully damaged Cap Export by eroding and eliminating its share of the market, including a suspension by Amazon of Cap Export's sales of the bed-in-a-box products.

o.  Defendants' conduct against Cap Export indicates a dangerous probability of securing monopoly power because Defendants have sued another competitor and sent numerous cease and desist letters to other competitors selling bed-in-a-box products alleging infringement of the invalid and unenforceable `123 Patent.  Indeed, Zinus immediately dismissed the sham patent lawsuit against Class Brands for zero dollars after the Court granted Cap Export's Rule 60 motion to set aside the illicitly obtained judgement, yet maintained the underlying sham patent lawsuit against Cap Export.

p.  Defendants' conduct constitutes fraud that has damaged Cap Export by Defendants' anticompetitive conduct.

19

58.    As a result of Defendants' wrongful conduct, Cap Export has lost many millions of dollars of business and its reputation has been and is being severely harmed.  Conversely, by eliminating legitimate competition through the sham patent lawsuit and false advertising, Defendants have made millions of dollars in illicit profits that must be disgorged.  If Defendants' unfair trade practices are not discontinued, it is likely that the damage to Cap Export will grow exponentially, causing irreparable harm to its business and to the reputation for quality that Cap Export has worked so hard to establish.

## FIRST CAUSE OF ACTION

### Lanham Act 43(a) False Advertising, Unfair Competition,
### Trade Libel, Product Disparagement
### (Against All Defendants)

59.    Cap Export restates and incorporates by reference the allegations in all preceding paragraphs.

60.    Through at least the advertisements in Exhibits B-D, Defendants made a false and misleading description of fact or representation of fact in a commercial advertisement about Defendants' bed-in-a-box product and Cap Export's Accused Products.  Specifically, through the advertising, Defendants denigrated Cap Export's Accused Products in bad faith by stating that they were unlawful and infringing products thereby making customers and potential customers potentially liable for patent infringement, and to dissuade customers and potential customers from purchasing Cap Export's Accused Products.  Defendants' statements were made in bad faith because they were fully aware that the `123 Patent was invalid and unenforceable because Defendants merely patented Woody's public domain bed-in-a-box bed that Lawrie and Defendants had been purchasing for three years prior to the application filing date.  Thereby, Defendants created the false impression that Defendants alone are the exclusive source for all bed-in-a-box products because

20

they own the irrefutably invalid and unenforceable `123 Patent and the illicitly obtained stipulated judgment.  Thus, Defendants misrepresented the nature, characteristics, and qualities of both Defendants' products and of Cap Export's products.

61.     The false statements made by Defendants as set forth above, constitute material misrepresentations and/or omissions of the nature, characteristics and qualities of Defendants' and Cap Export's goods, services and/or commercial activities, business reputation, and are thus in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The statements were intended to mislead or confuse consumers and direct them to Defendants' products instead of Cap Export's Accused Products.

62.     Due to such material misrepresentations, national e-commerce retailers were induced and deceived to promote and sell Defendants' products rather than Cap Exports products, including demoting Cap Exports' unrelated products in ecommerce store search rankings.  Both Defendants' and Cap Export's products are sold in direct competition in the same markets in interstate commerce.

63.     The aforesaid acts of Defendants constitute false advertising, unfair competition, trade libel, and product disparagement in that Defendants informed customers that Defendants' products are superior to Cap Export's bed-in-a-box, that Cap Export unlawfully copied what is covered in the `123 Patent without disclosing to clients that the patent is invalid and unenforceable, and that Cap Export entered into a stipulated judgment of infringement and is not allowed to continue selling its bed-in-a-box and Defendants are the exclusive source of the bed-in-a-box.

64.     In making such misrepresentations, Defendants acted in bad faith, intentionally, with knowledge of, and in willful and conscious disregard of Cap Export's rights, in misrepresenting the nature, characteristics and qualities of Defendants' products and illicitly obtained `123 Patent and of Cap Export's products.

21

65.     Defendants' misrepresentations concerning Cap Export and its products have deceived and are likely to continue to deceive a substantial segment of the intended audience.  The misrepresentations made by Defendants are material and have influenced and are likely to continue to influence purchasing decisions in the relevant markets.  Such misrepresentations have proximately caused and are likely to continue to cause injury to Cap Export by diverting sales.  Such conduct has also irreparably harmed Cap Export by leading consumers and others in the trade to believe that Cap Export was and is engaged in unlawful conduct and is a dishonest and a disreputable business.

66.     Cap Export lacks an adequate remedy at law.

67.     As a result of Defendants' acts, Cap Export has suffered and will continue to suffer irreparable injury, including lost sales and profits, injury to its brand, its product identity, and control over its goodwill, reputation and ability to move into new markets.

68.     As a result of Defendants' acts, Defendants have been and will continue to be unjustly enriched by profits that they have made in connection with the advertising, promotion and sale of Defendants' products and exclusion of Cap Export's products due to an illicitly obtained judgment.

69.     As a result of Defendants' acts, Cap Export has suffered and will continue to suffer monetary damages in an amount not yet determined. Additionally, Cap Export has incurred and will continue to incur liability for costs and attorneys' fees in defending against the sham patent lawsuit.

70.     Cap Export's damage to its goodwill and reputation is such as to warrant the trebling of damages in order to provide just compensation.

71.     By their acts, Defendants have violated §43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B), and unless they are restrained and enjoined by this Court, their actions will continue to cause irreparable harm and injury to Cap Export.

//

## SECOND CAUSE OF ACTION

### False Advertising, Cal. Bus. & Prof. Code §17500

### (Against All Defendants)

72.    Cap Export restates and incorporates by reference the allegations in the allegations in all preceding paragraphs.

73.    By virtue of their advertising, Defendants have misrepresented the nature, characteristics, and qualities of both Defendants' products, Defendants' illicitly obtained `123 Patent, and of Cap Export's products.

74.    The aforesaid acts of Defendants constitute false advertising, in that Defendants inform customers in bad faith that they have a patent that covers the bed-in-a-box product, that Defendants are the exclusive source of the bed-in-a-box product, and that Cap Export's Accused Products infringe the `123 Patent, when Defendants are fully aware that the `123 Patent is invalid and unenforceable because Defendants illicitly filed a patent application for Woody's public domain bed-in-a-box product that Defendants had been purchasing for three years prior to the application filing date, an example of which is attached as Exhibit A.  Defendants were also aware that they were not the exclusive source of a bed-in-a-box product because any person or entity could import and sell Woody's public domain bed-in-a-box product, which product is the basis of Cap Export's Accused Products.

75.    On information and belief, Defendants acted intentionally, with knowledge of, and in willful and conscious disregard of Cap Export's rights, in misrepresenting the nature, characteristics and qualities of Defendants' products, the `123 Patent, and of Cap Export's Accused Products.

76.    Cap Export lacks an adequate remedy at law.

77.    As a result of the acts of Defendants, Cap Export has suffered and will continue to suffer irreparable injury, including injury to the value of its brand, its product identity, and control over its goodwill, reputation and ability to move into new markets.

78.    As a result of Defendants' acts, Defendants have been and will continue to be unjustly enriched by profits that they have made in connection with the advertising, promotion and sale of Defendants' products.

79.    As a result of Defendants' acts, Cap Export has suffered and will continue to suffer monetary damages in an amount not yet determined. Additionally, Cap Export has incurred and will continue to incur liability for costs and attorneys' fees in defending a sham patent lawsuit.

80.    Cap Export's damage to its goodwill and reputation and is entitled to restitution and injunctive relief as available under Section 17535 and attorneys' fees pursuant to Cal. Code Civ. P. § 1021.5.

81.    By their acts, Defendants have engaged in False Advertising under the common and statutory law of the State of California and California Business and Professions Code § 17500, and unless they are restrained and enjoined by this Court, their actions will continue to cause irreparable harm and injury to Cap Export.

## THIRD CAUSE OF ACTION

### Tortious Interference with Existing and Prospective Economic Advantage
### (Against All Defendants)

82.    Cap Export restates and incorporates by reference the allegations in the allegations in all preceding paragraphs.

83.    Cap Export has valid business expectancies with its e-commerce partners, customers and prospective customers of its bed-in-a-box products.  Cap Export had a reasonable probability of realizing financial benefit from those customers and prospective customers.

84.    Defendants were aware of Cap Export's business expectancies with its e-commerce partners, customers and prospective customers, including Amazon, Walmart, and Wayfair.

85.    Defendants have undertaken intentional acts and misrepresentations

itemized above to disrupt the economic relationships between Cap Export and its e-commerce partners, customers and distributors.  All of the foregoing actions by Defendants were undertaken with the intention of causing third parties to do business with Defendants rather than with Cap Export, to induce said customers and distributors to purchase Defendants' manufactured products instead of purchasing Cap Export's, thereby depriving Cap Export of the profits and other benefits to be derived from sales of its falsely Accused Products, and otherwise causing injury to Cap Export and its business.

86.     At the time Defendants made these material misrepresentations and continued to litigate this action, they knew or should have known the statements were false and the actions groundless because (a) Lawrie had been purchasing Woody's public domain bed-in-a-box for at least three years prior to the application filing date; (b) Oh received Woody's bed-in-a-box product and emails explaining the product, and met with Woody three months prior to the patent application filing date and merely copied Woody's public domain product; (c) the claims of the `123 Patent were likewise invalid and unenforceable because they patented Woody's public domain product, which cannot be patented; (d) the `123 Patent was unenforceable for inequitable conduct because Oh, Lawrie, Song, and Lee deliberately failed to cite the Woody products as prior art when prosecuting the application, though the claims were directed to the Woody public domain design and anticipated or rendered obvious thereby; (e) Lawrie, during his first deposition in 2016, had misrepresented his knowledge of the existence of Woody's public domain bed-in-a-box which he had bought on three separate occasions beginning at least three years prior to the patent application filing date, and (f) Lawrie, during his second deposition in 2019, continued to provide false testimony denying his knowledge of Zinus's and Oh's copying of Woody's bed-in-a-box, when in fact he had been intimately involved in ordering Woody to deliver sample beds to Zinus Xiamen for copying and meeting with Woody in Las Vegas to negotiate an illicit

25

arrangement where Zinus would patent the public domain bed and Woody would be locked into an exclusive supply agreement.

87.    By maintaining the sham patent lawsuit and their communications with Cap Export's e-commerce partners, and existing or prospective customers – including through Exhibits B-D, Defendants intentionally disrupted Cap Export's established, economic business relationship and prospective business relationships and advantage, including with Amazon, Walmart, and Wayfair.  Defendants' expressions were intended to discourage e-commerce partners from selling and existing and prospective customers from buying Cap Export's products, causing business reputational and economic harm to Cap Export.

88.    Cap Export is entitled to an award of damages, including an amount up to three times the amount found as actual damages, attorney fees and costs as a result of Defendants' unlawful actions.  Moreover, Cap Export will continue to suffer damages as a result of Defendants' unlawful actions unless they, their officers, agents, servants, employees, attorneys and all persons acting in concert with Defendants are preliminarily and permanently enjoined from continuing such actions and appropriate corrective advertising is awarded.

89.    Defendants' conduct is and has been willful, wanton, malicious, oppressive, and in conscious disregard of Cap Export's rights, justifying the imposition of punitive and exemplary damages under California Civil Code §3294.

90.    Defendants threaten to, and unless restrained will disrupt further business with e-commerce partners, existing and potential customers and distributors of Cap Export's products, and/or will further interfere with other existing and potential customers and distributors of Cap Export products, for which damages would not afford adequate relief, in that they would not completely compensate Cap Export for the injury to Cap Export's business reputation and good will.

//

1

## FOURTH CAUSE OF ACTION

2

### California Trade Libel/Product Disparagement

3

### (Against All Defendants)

4    91.    Cap Export restates and incorporates by reference the allegations in

5    the preceding paragraphs.

6    92.    Cap Export's products previously enjoyed a good reputation in the

7    community.  Those products were disparaged by Defendants' false assertions of

8    infringement and that Cap Export's products were unlawful.  As detailed above, the

9    libelous and disparaging statements were knowingly and intentionally made despite

10   Defendants' knowledge that the `123 Patent was illicitly obtained, unenforceable, all

11   of its claims invalid, and the stipulated judgment was obtained through fraud,

12   misrepresentations, and in bad faith.  Defendants knew or should have known the

13   statements were false and the actions groundless because they were not the

14   exclusive source of a bed-in-a-box product and the `123 Patent was unenforceable

15   and the claims invalid and Cap Export was not an infringer and its products were not

16   unlawful because, *inter alia*, (a) Lawrie had been purchasing Woody's public

17   domain bed-in-a-box for at least three years prior to the application filing date; (b)

18   Oh received Woody's bed-in-a-box product and emails explaining the product, and

19   met with Woody three months prior to the patent application filing date and merely

20   copied Woody's public domain product; (c) the claims of the `123 Patent were

21   likewise invalid and unenforceable because they patented Woody's public domain

22   product, which cannot be patented; (d) the `123 Patent was unenforceable for

23   inequitable conduct because Oh, Lawrie, Song, and Lee deliberately failed to cite

24   the Woody products as prior art when prosecuting the application, though the claims

25   were directed to the Woody public domain design and anticipated or rendered

26   obvious thereby; (e) Lawrie, during his first deposition in 2016, had misrepresented

27   his knowledge of the existence of Woody's public domain bed-in-a-box which he

28   had bought on three separate occasions beginning at least three years prior to the

patent application filing date, and (f) Lawrie, during his second deposition in 2019, continued to provide false testimony denying his knowledge of Zinus's and Oh's copying of Woody's bed-in-a-box, when in fact he had been intimately involved in ordering Woody to deliver sample beds to Zinus Xiamen for copying and meeting with Woody in Las Vegas to negotiate an illicit arrangement where Zinus would patent the public domain bed and Woody would be locked into an exclusive supply agreement.  Even after the Court vacated the illicitly obtained stipulated judgment, Defendants continued to publish the false and misleading statements regarding Cap Export and its products, including that they were unlawful and infringing. Defendants have not issued a retraction.

93.     Defendants' assertions were published willfully, without justification, and without privilege to at least one third party through online advertising, direct mail advertising, through verbal communications, and through Defendants' website and third-party websites.

94.     Defendants made these statements with knowledge of the statements' falsity or with reckless disregard of the statements' truth or falsity.

95.     A reasonable person would have foreseen that, under the circumstances, Defendants' statements would harm Cap Export and damage its relationships with e-commerce partners, existing and prospective customers, and Defendants made these statements with the purpose of inducing e-commerce partners, existing and prospective customers of Cap Export to refrain from purchasing Cap Export's products and doing business with Cap Export.

96.     Cap Export alleges on information and belief that Defendants' false and disparaging statements directly and proximately caused e-commerce partners, existing and prospective customers of Cap Export not to purchase Cap Export's products, and that Cap Export has thereby suffered damages in an amount to be proven at trial.

97.     Defendant's publications are ongoing, in that they continue to be

published to Cap Export's e-commerce partners, customers and prospective customers and to third-party distributors.  Also, as of the date of this filing, Defendants' website publishes some, if not all, of these false statements.

98.    Money damages will not make Cap Export whole for the injury occasioned by these continuing statements. Unless enjoined by this Court, these false and damaging statements will continue.

99.    Defendants' conduct is and has been willful, wanton, malicious, oppressive, and in conscious disregard of Cap Export's rights in its trademark, justifying the imposition of punitive and exemplary damages under California Civil Code §3294.

## FIFTH CAUSE OF ACTION

### Statutory Unfair Competition, Cal. Bus. & Prof. Code § 17200

### (Against All Defendants)

100.    Cap Export restates and incorporates by reference the allegations in paragraphs 1 through 91 above.

101.    Defendants' advertisements, distribution, and dissemination of communications with literally false and misleading statements to Cap Export's e-commerce partners, customers and prospective customers constitutes unlawful and unfair business acts and unfair, deceptive, untrue and misleading advertising and thus constitutes unfair competition in violation of § 17200 et. seq. of the California Business and Professions Code.

104.    Cap Export is informed and believes and thereon alleges that unless restrained by this Court, Defendants will continue the aforesaid unlawful and unfair business acts, and restitution will not afford Cap Export adequate relief for the damage to its business in the public perception.

## PRAYER FOR RELIEF

WHEREFORE Cap Export prays for judgment against Defendants, and each

29

of them, as follows:

A.     That judgment be entered in favor of Cap Export and against Defendants;

B.     That on the Lanham Act cause of action, Cap Export be awarded its damages (including lost profits), disgorgement of Defendants' profits, and all trebled because of Defendants' willful and intentional misconduct, and injunctive relief barring further violations of the Lanham Act;

C.     That on the Cal. Bus. & Prof. Code §§ 17200 and 17500 causes of action, for an order requiring the defendants to restore any money or property that Defendants may have acquired as a result of any act or practice constituting unfair competition and/or actual damages for false or deceptive advertising;

D.     That on the trade libel/product disparagement cause of action, Cap Export be awarded damages, punitive damages, and injunctive relief barring further trade libel and product disparagement;

E.     That on the tortious interference with prospective economic advantage cause of action, Cap Export be awarded actual damages according to proof at trial, punitive damages, and injunctive relief;

F.     For an order awarding general and/or specific damages, in an amount to be fixed by the Court in accordance with proof, including punitive and exemplary damages as appropriate, as well as all of Defendants' profits or gains of any kind resulting from each cause of action, and further for an order awarding treble damages and disgorged profits, pursuant to 15 U.S.C. § 1117(b), because the acts of unfair competition, false advertising, trade libel, and product disparagement were willful and wanton;

G.     For an order finding that an award of pre and post-judgment interest is necessary to fully compensate Cap Export for the damage it has sustained;

H.     For an order awarding to Cap Export all of its costs, including its attorneys' fees incurred in prosecuting this action;

1      I.     For an order requiring Defendants to provide notice to the public and to

2  all customers and others with whom Defendants have been in contact, by means of

3  letter or advertisement, as appropriate, notifying such persons of this lawsuit,

4  retracting their previously issued false statements, and the injunctive decree

5  rendered hereunder, and paying for corrective advertisements;

6      J.     For an order awarding to Cap Export such other and further relief as the

7  Court may deem just and proper.

8

9  DATED:  January 27, 2023          **BEITCHMAN & ZEKIAN, P.C.**

10                                  **MILORD & ASSOCIATES, P.C.**

11                        By:   /s/ David P. Beitchman

12                            David P. Beitchman,
                                *Attorneys for Plaintiff*

13                            CAP EXPORT, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>DEMAND FOR JURY TRIAL</u>**

Cap Export hereby requests a trial by jury of any and all issues properly triable by a jury.

DATED:  January 27, 2023

**BEITCHMAN & ZEKIAN, P.C.**
**MILORD & ASSOCIATES, P.C.**

By:   /s/ David P. Beitchman
David P. Beitchman,
*Attorneys for Plaintiff*
CAP EXPORT, LLC

FAC - Cap Export, LLC v. Zinus, Inc.