# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAP EXPORT, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>ZINUS, INC., a California corporation; COLIN LAWRIE, an individual; ZINUS, INC. KOREA, a Korean corporation; ZINUS CANADA, INC., a Canadian corporation; KEITH REYNOLDS, an individual; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 2:21-cv-07148-JWH-MRWx<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [ECF Nos. 64 & 67] AND SPECIAL MOTION TO STRIKE [ECF No. 65 & 68]** |

Before the Court are the motions of Defendants Zinus, Inc.; Colin Lawrie; Zinus, Inc. Korea; Zinus Canada, Inc.; and Keith Reynolds to dismiss and to strike the First Amended Complaint of Plaintiff Cap Export, LLC.[1]  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition,[2] the Court orders that both motions are **DENIED**, for the reasons set forth herein.

## I.  BACKGROUND

### A.   Factual Allegations

This case concerns Cap Export's false advertising and related claims against Defendants, and it stems from a previous patent infringement action between the parties involving public domain "bed-in-a-box" products.[3]  Cap Export alleges that Zinus fraudulently obtained U.S. Patent No. 8,931,123 (the "'123 Patent") after Zinus used the public domain bed-in-a-box sets of non-party Woody Furniture Manufacturer Sdn Bhd as the basis for its patent application.[4]

Relevant to the instant action, Cap Export asserts that before it prevailed in the patent litigation, Defendants embarked on a false advertising campaign that disparaged Cap Export and its products.[5]  Cap Export alleges that Defendants disseminated false and misleading statements to online retail platforms and customers, accusing Cap Export of unlawfully infringing Zinus' '123 Patent, despite the fact that Defendants knew that the '123 Patent was invalid and unenforceable.[6]  Cap Export avers that Defendants profited

---

[1] *See* Defs.' Mot. to Dismiss (the "Motion to Dismiss") [ECF No. 64]; Defs.' Special Mot. to Strike (the "Motion to Strike") [ECF No. 65]; Joinder of Def. Colin Lawrie to Defs.' Motion to Dismiss [ECF No. 67]; Joinder of Def. Colin Lawrie to Defs.' Motion to Strike [ECF No. 68].

[2] The Court considered the documents of record in this action, including the following papers:  (1) First Am. Compl. (the "Amended Complaint") [ECF No. 54]; (2) Motion to Dismiss (including its attachments); (3) Motion to Strike (including its attachments); (4) Pl.'s Combined Opp'n to the Motion to Dismiss and Motion to Strike (the "Opposition") [ECF No. 69]; (5) Defs.' Reply in Supp. of the Motion to Dismiss (the "Motion to Dismiss Reply") [ECF No. 71]; and (6) Defs.' Reply in Supp. of the Motion to Strike (the "Motion to Strike Reply") [ECF No. 73].

[3] Amended Complaint ¶ 1.

[4] *Id.*

[5] *Id.* at ¶ 4.

[6] *Id.*

from the false advertising at Cap Export's expense and that Defendants used the sham patent lawsuit to "squash" fair competition.[7]

Cap Export contends that in December 2015—after Zinus fraudulently procured the '123 Patent—Zinus transmitted a cease-and-desist letter to Cap Export in which Zinus claimed to be the owner of the '123 Patent and asserted that Cap Export's sales of bed-in-a-box products infringed Zinus' patent.[8] Defendants' counsel also sent the letter to Cap Export's customer 4Moda Corp. and to Amazon. Amazon responded by shutting down 4Moda's Amazon webpage, which caused Cap Export to lose sales of its bed-in-a-box products.[9]

Additionally, Cap Export alleges that Defendants acted in bad faith by bringing a sham patent lawsuit based upon the '123 Patent and that Lawrie—Zinus' President—made numerous misrepresentations in declarations and during depositions while serving as Zinus' expert witness.[10] Cap Export submits that Defendants were aware that the '123 Patent was invalid and unenforceable, because Lawrie was involved in the purchase of Woody's prior art bed-in-a-box products and in Defendants' plan to use those designs for the invention claimed in the '123 Patent.[11]

Defendants' underlying patent litigation induced Cap Export to enter into a $1.1 million consent judgment for infringement of the '123 Patent.[12] After Cap Export paid Zinus $330,000 under that stipulated judgment, Cap Export learned through documents produced in a different lawsuit—*Zinus, Inc. v. Classic Brands, LLC*, 2019 WL 8226076 (C.D. Cal. Oct. 3, 2019)—that the '123 Patent was based upon the prior art Woody's bed-in-a-box product.[13] Cap Export's further investigation showed that Lawrie had purchased Woody's beds for at least three years before Zinus applied for the '123 Patent, but Defendants continued to litigate the patent dispute against Cap Export and refused to disclose that prior art.[14]

Cap Export alleges that, notwithstanding mounting evidence that the '123 Patent was invalid, Defendants published a press release in June 2019 that falsely advertised

---

[7]     *Id.*
[8]     *Id.* at ¶ 27.
[9]     *Id.* at ¶ 28.
[10]    *Id.* at ¶¶ 31 & 32.
[11]    *Id.* at ¶ 35.
[12]    *Id.* at ¶ 39.
[13]    *Id.* at ¶ 40.
[14]    *Id.* at ¶ 43.

Defendants' judgment against Cap Export in the underlying patent litigation.[15] Cap Export claims that Defendants published the advertisement on Zinus' website even after this Court vacated Defendants' stipulated judgment against Cap Export and that Defendants never retracted the false advertisement.[16] Further, Defendants distributed the false advertisement to Cap Export's online sales partners—including Amazon, Walmart, and Wayfair—which caused a decrease in Cap Export's product ranking and sales.[17] Defendants also disseminated the false advertisement through online Google Ads[18] and through a press release published in July 2019 on the Business Insider website.[19]

Based upon information about the Woody's prior art product, this Court granted summary judgment in favor of Cap Export in the patent case and invalidated the '123 Patent. After a partially successful appeal of the case to the Federal Circuit, Zinus gave Cap Export a covenant not to sue with respect to Cap Export's bed-in-a-box products.[20] Cap Export alleges that Defendants cost Cap Export millions in lost sales as a result of the sham patent litigation and false advertising and that Defendants damaged Cap Export's reputation with its customers.[21]

**B.    Procedural History**

Cap Export commenced this case September 2021 and filed the operative Amended Complaint in January 2023. In that Amended Complaint, Cap Export asserts the following claims for relief:

- false advertising, unfair competition, trade libel, and product disparagement under the Lanham Act, 15 U.S.C. § 1125(a);
- false advertising under Cal. Bus. & Prof. Code § 17500;
- tortious interference with existing and prospective economic advantage;
- California trade libel and product disparagement; and
- statutory unfair competition under Cal. Bus. & Prof. Code § 17200.[22]

---

[15]    *Id.* at ¶ 45.
[16]    *Id.*
[17]    *Id.* at ¶ 48.
[18]    *Id.* at ¶ 49.
[19]    *Id.* at ¶ 51.
[20]    *Id.* at ¶ 56.
[21]    *Id.* at ¶ 58.
[22]    *See id.*

Defendants filed their Motion to Dismiss and Motion to Strike in February 2023. After conferences of counsel, Cap Export voluntarily dismissed its fourth claim for California trade libel and product disparagement.[23] The Motions are fully briefed.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

### B. Special Motion to Strike

Under California law, a defendant may file a special motion to strike a strategic lawsuit against public participation ("SLAPP"). Such a motion provides the court with the opportunity to dismiss at an early stage unmeritorious litigation that challenges various kinds of protected speech. *See* Cal. Civ. Proc. Code § 425.16(b)(1); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 905 (2002). Federal courts give full effect to California's anti-SLAPP statute. *See Dean v. Kaiser Found. Health Plan, Inc.*, 562

---

[23]  *See* Pl.'s Notice of Voluntary Dismissal [ECF No. 59].

F. Supp. 3d 928, 933 (C.D. Cal. 2022) (citing *United States* ex rel. *Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999)).

Anti-SLAPP motions are subject to a two-step analysis with shifting burdens. First, the movant must make a threshold showing that the challenged claim arises from an "act . . . in furtherance of [the movant's] right of petition or free speech" within the meaning of Cal. Civ. Proc. Code § 425.16(e). *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (internal quotation marks omitted). If the movant satisfies this threshold showing, then the burden shifts to the claimant to establish a reasonable probability of prevailing by demonstrating that the challenged claim is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* (internal quotation marks omitted). If the motion "challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018).

## III. DISCUSSION

### A. Lanham Act Claim

Defendants move to dismiss Cap Export's Lanham Act claim,[24] largely on the theory that Cap Export cannot assert a false advertising claim based upon the invalidity of Zinus' '123 Patent. Defendants contend that "the truth of representations about intellectual property rights falls far outside the Lanham Act's limited scope" and that, therefore, Cap Export's claim must be dismissed.[25]

Section 43(a)(1)(B) of the Lanham Act—codified at 15 U.S.C. § 1125(a)(1)(B)—authorizes false advertising claims by a plaintiff who is commercially injured by a defendant's false or misleading representations in commercial advertising. The challenged representation can be any statement, term, symbol, or device that conveys a false or misleading message to consumers about the nature, qualities, characteristics, or geographic origin of any person's goods or services. *See id.* Of particular relevance to Cap Export's action, the Lanham Act allows a plaintiff to assert trade libel and product disparagement claims against a defendant who falsely or misleadingly advertises the plaintiff's goods or services. *See* 15 U.S.C. § 1125(a); *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347-48 (Fed. Cir. 1999); *see also Fisher Tooling Co. v. Gillet Outilliage*, 2006

---

[24] Motion to Dismiss 6:17-9:6.

[25] *Id.* at 9:4-6.

WL 5895307, at *5 (C.D. Cal. June 6, 2006) ("Section 43(a) serves as the basis for claims generally known as 'false advertising,' 'trade libel,' and 'product disparagement.'") (citation and quotation omitted).

Central to Cap Export's Opposition is the Federal Circuit's decision in *Zenith*, in which the court considered potential conflicts between patent law and the Lanham Act and held that false advertising by a defendant concerning patent infringement must be undertaken in bad faith in order for the plaintiff to have a viable Lanham Act claim. *See Zenith*, 182 F.3d at 1353. Defendants characterize *Zenith* as non-binding authority on this Court,[26] but the Ninth Circuit has directed the use of *Zenith*'s bad faith requirement when evaluating Lanham Act claims concerning patent infringement. *See Fisher Tool Co. v. Gillet Outillage*, 530 F.3d 1063, 1068 (9th Cir. 2008); *see also Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1022 (9th Cir. 2007) (because of the "particularly strong national uniformity concerns" in patent law, the Ninth Circuit is especially "hesit[ant]" to open up conflicts with other circuits in this area).

Defendants argue that none of their statements regarding exclusivity or the alleged fraudulent judgment against Cap Export can support a Lanham Act claim, because those statements did not concern the intrinsic quality of Defendants' goods (*e.g.*, lower cost or better materials), but, rather, they concerned extrinsic matters such as the identity of the inventor of the bed-in-a-box or whether Zinus was the only legitimate source of the product.[27] Defendants cite to both Ninth and Federal Circuit authorities in support of their Motion to Dismiss. *See Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. 2009) (reversing the district court's judgment for the plaintiff concerning a Lanham Act claim because "authorship, like licensing status, is not a nature, characteristic, or quality, as those terms are used in Section 43(a)(1)(B) of the Lanham Act"); *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (holding that the Lanham Act does not "cover misrepresentations about copyright licensing status" because it "would allow competitors engaged in the distribution of copyrightable materials to litigate the underlying copyright infringement when they have no standing to do so").

Although Defendants attempt to distinguish *Zenith* in their Reply, Defendants do not address *Zenith*'s bad faith requirement nor whether Defendants engaged in bad faith when making advertisements concerning the '123 Patent. Instead, Defendants mistakenly double down on *Sybersound*'s holding that only the "nature, characteristics, or quality of good[s]" can support a Lanham Act claim, and they contend that various courts following *Zenith* held that "representations about intellectual property rights are outside the scope

---

[26]   Motion to Dismiss Reply 1:9-11.

[27]   Motion to Dismiss 8:10-14.

of the Lanham Act."[28] Defendants ignore Ninth Circuit authority approving of *Zenith*'s holding, *see Fisher*, 530 F.3d at 1068, as well as later Supreme Court cases affirming that a plaintiff is permitted to assert a Lanham Act claim concerning patent infringement.

One such case is *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), in which the Supreme Court held that the defendant had "disparaged [the plaintiff's] business and products by asserting that [the plaintiff's] business was illegal." *Id.* at 138. The Supreme Court specifically highlighted the lower court proceedings, in which the plaintiff directly targeted the defendant when it falsely advertised that the plaintiff infringed the defendant's patents. *Id.* (citing *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 411 n.10 (6th Cir. 2012), *aff'd*, 572 U.S. 118 (2014)). "When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Id.*

Defendants attempt to distinguish *Lexmark* by arguing that the case did not address "false statements about patent infringement," but, as the Supreme Court's examination of the lower court's reasoning in *Lexmark* demonstrates, Defendants are wrong.[29] Next, Defendants claim that *Lexmark* presented only a question of whether the plaintiff had standing to assert a Lanham Act claim. While that is true, *Lexmark* nonetheless analyzed false advertisements concerning patent infringement and concluded that those acts could support a Lanham Act claim.[30] *Id.* at 138. Finally, the concern that Defendants express—that for Cap Export to prevail would require *Lexmark* to overrule *sub silento* the Ninth and Federal Circuit—is unfounded.[31] Cases such as *Sybersound* and *Baden* examined Lanham Act claims in distinguishable contexts, and neither discussed *Zenith* nor its holding on bad faith conduct as a prerequisite for a Lanham Act claim concerning patent infringement. *See Zenith*, 182 F.3d at 1353.

Here, Cap Export sufficiently pleads that Defendants disparaged Cap Export's bed-in-a-box product in bad faith. First, Cap Export avers in its Amended Complaint that Defendants publicized that "Cap Export was acting unlawfully" and was infringing the '123 Patent, despite the facts that Lawrie and Suk Kan Oh—allegedly the sole inventor of the '123 Patent—knew about Woody's public domain bed-in-a-box product and knew that the '123 Patent was invalid and unenforceable.[32] Defendants' claims that Cap Export

---

[28]   Motion to Dismiss Reply 1:6-17.

[29]   *Id.* at 1:18-21.

[30]   *Id.* at 1:21-24.

[31]   *Id.* at 2:3-7.

[32]   Amended Complaint ¶¶ 46 & 50.

was acting illegally, while knowing that the '123 Patent was invalid, meets the bad faith requirement for a Lanham Act claim concerning patent infringement. Defendants' Motion to Dismiss fails.

### B. State Law Claims

#### 1. Litigation and Fair Report Privileges

Defendants contend that Cap Export's state law claims fail in view of the litigation and fair report privileges under Cal. Civ. Code § 47(b) and § 47(d)(1), respectively.[33] The Court will address each in turn.

California's litigation privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." *Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014) (citing *Mansell v. Otto*, 108 Cal. App. 4th 265, 133 (2003)). The privilege "immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." *Olsen v. Harbison*, 191 Cal. App. 4th 325, 333 (2010). Thus, "[t]he litigation privilege . . . present[s] a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." *Flatley v. Mauro*, 39 Cal. 4th 299, 323 (2006).

Cap Export responds that Defendants' press release, Google AdWords, and letters to Cap Export's distribution platforms did not achieve litigation-related objectives, nor were they connected or logically related to the action.[34] Specifically, Cap Export pleads that (1) those website advertisements and messages falsely claimed that Cap Export's bed-in-a-box design was unlawful; (2) Defendants claimed that Cap Export was unlawfully infringing Zinus' '123 Patent; and (3) those communications were made in bad faith because both Lawrie and Oh were aware that the '123 Patent was invalid.[35]

For the litigation privilege to apply, the communication's "connection or logical relation" to the action must be a "functional connection." *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1146 (1996). "That is to say, the *communicative act*—be it a document filed with the court, a letter between counsel or an oral statement—must function as a necessary or useful step in the litigation process and must serve its purposes." *Id.* (emphasis in original). Further, "[p]ublic mudslinging" in the form of Defendants'

---

[33] Motion to Dismiss 9:13-28 & 14:13-21.

[34] Opposition 21:1-4.

[35] Amended Complaint ¶¶ 46(e), 47, 50, & 51.

communications accusing Cap Export of unlawful infringement are not afforded "the same protections which section 47(b) gives to court processes." *Id.* As such, Cap Export's claims overcome Defendants' arguments for the application of the litigation privilege.

Next, Defendants contend that their publications were protected by California's fair report privilege, which "confers an absolute privilege on any fair and true report in, or a communication to, a public journal of a judicial proceeding, or anything said in the course thereof." *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1082 (S.D. Cal. 2021) (citation and quotation omitted). "To be 'fair and true,' the report must [capture] the substance, the gist or sting, of the subject proceedings as measured by considering the natural and probable effect [of the report] on the mind of the average reader." *Id.* (quoting *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 787–88 (2017)). "The defendant is entitled to a certain degree of flexibility/literary license in this regard, such that the privilege will apply even if there is a slight inaccuracy in details—one that does not lead the reader to be affected differently by the report than he or she would be by the actual truth." *Id.* (quoting *Argentieri*, 8 Cal. App. 5th at 431). "When [the privilege] applies, the reported statements are absolutely privileged regardless of the defendants' motive for reporting them.'" *Id.* (quoting *Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 431 (2016), *as modified* (Jan. 10, 2017)).

Here, Defendants' assertion of fair report privilege fails because Cap Export pleads that the above-mentioned press releases, publications, and communications deviated from the parties' court proceedings. Defendants claimed that Cap Export infringed multiple "patents" and falsely asserted that Cap Export "deliberate[ly] cop[ied] Zinus' innovation, which could mislead those who depend on Zinus' exceptional *product quality*."[36] Although there may be factual disputes regarding whether Defendants' claims were "fair and true," Defendants' assertion of the fair report privilege fails because Cap Export adequately pleads that Defendants' attacks on Cap Export's product quality exceeded what was reported in the court proceedings.

### 2. Unfair Competition and False Advertising Claims

Defendants next contend that Cap Export's claims under California unfair competition law ("UCL") and false advertising law ("FAL") fail because Cap Export "is not entitled to restitution or an injunction, the only types of relief available under these statutes."[37] The gravamen of Defendants' argument on those statutes is that Cap Export does not seek the recovery of money or property given to Defendants, nor may a court

---

[36] Opposition 23:19-24 (emphasis in original).

[37] Motion to Dismiss 16:2-4.

issue an injunction against Defendants for their past conduct that is not likely to reoccur. With respect to that latter point, Defendants note that Zinus issued a covenant not to sue and that the parties agreed to dismiss their respective claims and counterclaims in the underlying patent infringement case.[38]

Cap Export's UCL and FAL claims survive the pleading stage, though, for multiple reasons. First, although Defendants claim that they do not have control over their statements made on platforms such as the Business Insider website, Cap Export highlights that Defendants never issued a retraction of the allegedly false advertisement. *See Nat'l Prod., Inc. v. Gamber-Johnson LLC*, 734 F. Supp. 2d 1160, 1171 (W.D. Wash. 2010), *aff'd*, 449 F. App'x 638 (9th Cir. 2011) (holding that a permanent injunction was necessary when the defendant "admitted that it never attempted to retract" the offending materials); *see also Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 570 (1998) (discussing the amendment of the UCL "to expand the scope of injunctive relief to encompass past activity"). Even though Defendants made the allegedly injurious statements in the past, Defendants' failure to issue a retraction justifies Cap Export's UCL claim.

Defendants' Motion to Dismiss Cap Export's FAL claim fails for similar reasons. The FAL does not require that the defendant knows of the falsity of the advertisement, *see Khan v. Med. Bd.*, 12 Cal. App. 4th 1834, 1846 (1993), but only that the plaintiff shows that members of the public are likely to be deceived, *see Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). Defendants' failure to retract the allegedly injurious statements and advertisements applies equally to justify Cap Export's FAL claim, and injunctive relief is similarly available. Accordingly, Cap Export's UCL and FAL claims survive the pleading stage.

### 3. Tortious Interference with Prospective Economic Advantage Claim

Finally, Defendants move to dismiss Cap Export's claim for tortious interference with prospective economic advantage. The tort of tortious interference with prospective economic advantage consists of the following elements: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (citation and quotation omitted). Additionally, the claim requires that the "defendant

---

[38] *Id.* at 16:18-17:8.

knew that the interference was certain or substantially certain to occur as a result of its action." *Id.*

Here, Defendants targeted Cap Export's economic relationship with Amazon, Walmart, and Wayfair by sending communications to those companies concerning the allegedly bad faith underlying litigation, and Cap Export pleads that those communications damaged Cap Export's sales.[39] As discussed above, the Federal Circuit in *Zenith* held that tortious interference claims are not preempted by patent law when those claims involve "bad faith marketplace conduct by the patentee[.]" *Zenith*, 182 F.3d at 1355. Further, the *Zenith* court held that "tortious interference claims[] based on publicizing a patent in the marketplace are not preempted by patent laws if the claimant can show that the patentholder acted in bad faith in its publication of the patent." *Id.* Because Cap Export adequately pleads that Defendants initiated the underlying patent litigation in bad faith, that Lawrie and Oh were aware that the '123 Patent was invalid, and that Zinus' bed-in-a-box product was based upon a product in the public domain, Cap Export's tortious interference claim survives the pleading stage.

### C.   Defendants' Anti-SLAPP Motion

In addition to their Motion to Dismiss, Defendants move to strike Cap Export's Amended Complaint under California's anti-SLAPP statute. "A SLAPP suit is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). "California's anti-SLAPP statute was 'enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation.'" *Id.* (citation and quotation omitted). "Specifically, California's anti-SLAPP statute allows a defendant to move to strike a plaintiff's complaint if it 'aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue.'" *Id.* (citing Cal. Civ. Proc. Code § 425.16(b)(1)).

As discussed above, courts apply a two-step analysis to motions to strike under the anti-SLAPP statute. "First, a defendant 'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Id.* at 1110 (citing *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999)). "Second, once the defendant has made a prima facie showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Id.* "If 'the court determines that the plaintiff has established

---

[39]   Amended Complaint ¶¶ 28, 48, 57(k-n), & 84-87.

that there is a probability that the plaintiff will prevail on the claim,' the motion to strike must be denied." *Id.* (citing Cal. Civ. Proc. Code § 425.16(b)(1)).

As explained above, the Court denies Defendants' Motion to Dismiss with regard to every claim in Cap Export's Amended Complaint. That analysis convinces the Court that Cap Export has sufficiently demonstrated a probability of success on the challenged claims. Accordingly, Defendants' Motion to Strike is likewise **DENIED**. Conversely, however, that ruling does not entitle Cap Export to attorneys' fees for successfully opposing the Motion. Although Cap Export requests attorneys' fees—accusing Defendants' Motion of being "meritless and filed to delay proceedings and to multiply costs"[40]—the Court does not find either of Defendants' Motions frivolous. *See Gerbosi v. Gaims, Weil, W. & Epstein, LLP*, 193 Cal. App. 4th 435, 450 (2011) ("Frivolous in this context means that any reasonable attorney would agree the motion was totally devoid of merit."). Because Defendants' Motions are not frivolous, Cap Export's request for attorneys' fees is **DENIED**.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Defendants' Motion to Dismiss is **DENIED**.

2. Defendants' Motion to Strike is **DENIED**.

3. Cap Export's request for attorneys' fees is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 28, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[40] Opposition 24:26-27.